IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-04-CV-1539 |
| | § | |
| OUSLEY L. LACY, JR., ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the court[1] are Cross-Plaintiff Lucinda Bowdry's Motion for Default Judgment and Alternative Motion for Summary Judgment,[2] Lucinda Bowdry's Motion for Substitution of Real Party in Interest,[3] and Cross-Defendants Ousley L. Lacy, Jr. and Barbara Lacy's Motion for Leave to File Answer to Cross-Plaintiff, Lucinda Bowdry's Original Cross-Claim.[4]  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Cross-Defendants' Motion for Substitution of Real Party in Interest, **DENIES** Cross-Plaintiff's Motion for Default Judgment, **GRANTS IN PART AND DENIES IN PART** Cross-Plaintiff's Motion for Summary Judgment and **GRANTS**

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 18, 71.

[2]    Docket Entry No. 65.

[3]    Docket Entry No. 66.

[4]    Docket Entry No. 67

Cross-Defendants' Motion for Leave to File Answer to Cross-Plaintiff's Cross-Claim.

## I.  Case Background

On April 19, 2004, the United States of America ("United States") filed a complaint pursuant to 26 U.S.C. §§ 7401 and 7403 to reduce to judgment certain federal tax assessments made against Defendant Ousley L. Lacy, Jr. ("Lacy") for trust fund recovery penalties in the amount of $203,190.00, plus interest and other statutory additions as provided by law.[5]  Specifically, the United States sought to foreclose upon the federal tax liens encumbering Lacy's interest in several properties located in Fort Bend County and Harris County, Texas.[6]  The United States further sought to appoint a receiver and liquidate the assets of two corporations owned by Lacy, Le-Shun Development, Inc. and Lazer Construction Company, Inc., to pay Ousley's outstanding trust fund liabilities.[7]

On March 8, 2005, the United States filed its Second Amended Complaint in order to add as defendants certain individuals that may have an interest in the properties owned by Lacy and encumbered by the United States' tax liens.[8]  Lucinda Bowdry ("Bowdry") was

---

[5]     Docket Entry No. 1.

[6]     <u>Id.</u>

[7]     <u>Id.</u>

[8]     Docket Entry No. 29.

2

among these defendants.[9]  The United States alleged that Bowdry had
an interest in certain real property located at 15414 Summer Ridge
Ct., Missouri City, Texas (the "Property"), which is one of the
properties that is subject to the foreclosure action.[10]  Lacy and
his wife, Barbara Lacy (collectively the "Lacys"), purchased the
Property in July 1999 and conveyed it by general warranty deed to
Bowdry on April 30, 2004.[11]  Bowdry filed an answer to the Second
Amended Complaint on April 28, 2005,[12] and subsequently sought leave
to file an amended answer and cross-claim against the Lacys.[13]

In her cross-claim, Bowdry asserts that the Lacys breached the
warranty of title, the warranty of seisin and the covenant against
encumbrances when they conveyed the Property to Bowdry knowing that
it was encumbered by a federal tax lien.[14]  Bowdry further asserts
causes of action under the Texas Deceptive Trade Practices Act and
for statutory and common law fraud in connection with the Lacys'
execution of an Affidavit as to Debts and Liens with respect to the

---

[9]     Id.

[10]     Id.

[11]     See Bowdry's Motion for Default Judgment and Alternative Motion for
Summary Judgment, Docket Entry No. 65, Ex. C, General Warranty Deed and Ex. G,
Deposition of Ousley L. Lacy, p. 120.

[12]     Docket Entry No. 42.

[13]     Docket Entry No. 59.

[14]     Docket Entry No. 60.

Property.[15]  Specifically, Bowdry alleges that the Lacys averred in
the affidavit that there "were no past due federal taxes and that
no federal lien had been filed on the property."[16]  Finally, Bowdry
contends that the Lacys breached their earnest money contract, in
which the Lacys covenanted to release all existing liens on the
Property prior to closing.[17]

**II.  Bowdry's Motion for Substitution of Real Party in Interest**

On September 27, 2005, Bowdry filed a motion seeking to
substitute First American Title Insurance Company ("First
American")[18] in her stead as a defendant in this action.[19]  First
American issued a Residential Owner's Policy of Title Insurance
(the "Policy") to Bowdry, wherein First American agreed to defend
Bowdry against certain adverse claims of title to the Property.[20]

---

[15]   Id.  In her motion for partial summary judgment, Bowdry makes clear
that she is pursuing a cause of action for statutory fraud under Texas Business
and Commerce Code § 27.01, Fraud in Real-Estate and Stock Transactions.  This
provision imposes civil liability upon an individual that makes a fraudulent
statement in connection with a real-estate transaction.  Tex. Bus. & Com. Code
Ann. § 27.01(a).  This section likewise provides that a defrauded individual
shall recover actual damages, including "reasonable and necessary attorney's
fees, expert witness fees, costs for copies of depositions, and costs of court."
Id. §§ 27.01(b), (e).  A defrauded individual is also entitled to recover
exemplary damages if the other party to the transaction made the false
representation with "actual awareness of the falsity."  Id. § 27.01(c).

[16]   See Bowdry's Motion for Default Judgment and Alternative Motion for
Summary Judgment, Docket Entry No. 65, Ex. F, Affidavit As to Debts and Liens.

[17]   See Bowdry's Cross-Claim, Docket Entry No. 60.

[18]   First American is the title company that insured title for Bowdry
with respect to the Property.

[19]   Docket Entry No. 66.

[20]   Id. at Ex. A-1, Residential Owner's Policy of Title Insurance.

4

Pursuant to the Policy, First American assumed the costs of defending this action against Bowdry and settled all claims against her by rendering payment to the United States in the amount of $19,461.00.[21]   The United States filed a motion to dismiss its claims against Bowdry with prejudice.[22]   The court granted this motion on September 12, 2005.[23]

The only claim that remains with respect to Bowdry in this action is Bowdry's cross-claim against the Lacys.[24]  First American is contractually subrogated to Bowdry's rights with respect to the cross-claim in accordance with the terms of the Policy. Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right.  See Cockrell v. Republic Mortgage Ins. Co., 817 S.W.2d 106, 113 (Tex. App.–Dallas, 1991, no writ).  A title insurance company may be subrogated to the rights of its insured when it discharges an encumbrance on the property it insures.  Wolff v. Commercial Standard Ins. Co., 345 S.W.2d 565, 568 (Tex. App.–Houston [1st Dist.] 1961, writ ref'd n.r.e.).  Paragraph 7 of the Policy, titled "Transfer of Your Rights," states in pertinent part:

When we settle a claim, we have all the rights you had

---

[21]   See Bowdry's Motion for Default Judgment and Alternative Motion for Summary Judgment, Docket Entry No. 65, Ex. A, Sworn Affidavit of Lucinda Bowdry.

[22]   Docket Entry No. 63.

[23]   Docket Entry No. 64.

[24]   Docket Entry No. 60.

5

against any person or property related to the claim.  You
must transfer these rights to us when we ask, and you
must not do anything to affect these rights.[25]

In accordance with this provision, Bowdry seeks to substitute First

American for herself as cross-claimant against the Lacys.

Rule 25 of the Federal Rules of Civil Procedure allows for the

substitution of parties upon a transfer of interest.[26]  It states:

In case of any transfer of interest, the action may be
continued by or against the original party, unless the
court upon motion directs the person to whom the interest
is transferred to be substituted in the action or joined
with the original party.[27]

Pursuant to this rule, the court finds that First American is the

real party in interest with respect to the cross-claim asserted

against the Lacys and, accordingly, the court **GRANTS** the motion for

substitution of real party in interest.[28]

### III.  Bowdry's Motion for Default Judgment Against the Lacys

On September 27, 2005, Bowdry filed a motion for default

judgment and alternative motion for summary judgment against the

Lacys.[29]  In her motion, Bowdry argues that she is entitled to a

default judgment against the Lacys for their failure to timely

---

[25]    See Bowdry's Motion for Substitution of Real Party in Interest,
Docket Entry No. 66, Ex. A-1, Residential Owner's Policy of Title Insurance, ¶
7.

[26]    See Fed. R. Civ. P. 25(c).

[27]    Id.

[28]    The court will continue to refer to Bowdry as the moving party.  The
judgment will reflect First American as the prevailing party.

[29]    Docket Entry No. 65.

6

answer her cross-claim.[30]  Subsequent to the filing of this motion,
however, the Lacys filed an answer to Bowdry's cross-claim.[31]

Federal Rule of Civil Procedure 55 authorizes a court to enter
a default judgment "if the party against whom the judgment is
sought has appeared in the action."  See Fed. R. Civ. P. 55(b)(2).
In that event, the party "shall be served with written notice of
application for judgment at least 3 days prior to the hearing on
such application."  Id.  The Fifth Circuit has expressly stated
that default judgments are "a drastic remedy" that are "not favored
by the Federal Rules and resorted to by courts only in extreme
situations."  See Sun Bank of Ocala v. Pelican Homestead & Sav.
Ass'n, 874 F.2d 274, 276 (5th Cir. 1989).  Although untimely, the
court received the Lacys' answer to Bowdry's cross-claim prior to
its consideration of Bowdry's motion for default judgment.
Accordingly, in light of the Fifth Circuit precedent regarding this
issue, the court finds that the Lacys are not in default and **DENIES**
the motion for default judgment.

### IV.  Bowdry's Motion for Summary Judgment Against the Lacys

In her motion for summary judgment, Bowdry argues that she has
presented facts sufficient to establish every element of her claims
against the Lacys.[32]  Specifically, she seeks summary judgment as to

---

[30]    Id.

[31]    Docket Entry No. 68.

[32]    Docket Entry No. 65.

the following causes of action:  1) breach of the warranty of title, covenant of seisin and covenant against encumbrances, as it relates to the general warranty deed for the Property; 2) breach of the residential contract entered into between Bowdry and the Lacys; 3) common law fraud; and 4) fraud under Texas Business and Commerce Code § 27.01.[33]   In addition to economic damages in the amount of $19,461.00, Bowdry seeks attorneys' fees, prejudgment interest and postjudgment interest.[34]  The court notes that it has supplemental jurisdiction over Bowdry's Texas-state law claims.   The court further notes that although Bowdry asserts a cause of action under the Texas Deceptive Trade Practices Act in her cross-claim, she fails to address this claim in her motion for summary judgment. Thus, Bowdry's motion for summary judgment is in reality a motion for partial summary judgment, and the court will treat it as such.

A.  **Summary Judgment Standard**

A grant of summary judgment under the federal rules is proper only when the evidence before the court fails to raise any genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

---

[33]   Id.

[34]   Id.

(1986); <u>TIG Ins. Co. v. Sedgwick James of Washington</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant bears the initial burden of informing the court of the basis for a grant of summary judgment by identifying relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, and affidavits on file that demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  Upon a showing that there is an absence of evidence to support an essential element of the non-movant's cause, the burden shifts to the non-movant to produce evidence demonstrating that a genuine issue of material fact does exist which must be resolved by a trier of fact.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324.  To satisfy this burden, the non-movant's evidence must raise more than mere "metaphysical doubt" about the material facts.  <u>Thomas v. Great Atl. and Pac. Tea Co.</u>, 233 F.3d 326, 331 (5th Cir. 2000).  Therefore, the non-movant's conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are insufficient to raise a fact issue for trial.  <u>Brown v. City of Houston</u>, 337 F.3d 539, 541 (5th Cir. 2003).  When determining whether the evidence in the record creates a fact issue, the court resolves all doubts and views all reasonable inferences drawn from the evidence in favor of the non-movant.  <u>Liberty Lobby</u>, 477 U.S. at 255; <u>Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).

**B.    The Lacys' Liability for Breach of the Warranty of Title, Covenant of Seisin and Covenant Against Encumbrances in the General Warranty Deed**

General warranty deeds expressly bind grantors – the Lacys in this instance – to defend against title defects created by the grantors or any prior titleholder.  See Munawar v. Cadle Co., 2 S.W.3d 12, 16 (Tex. App.–Corpus Christi 1999, pet. denied).  The general warranty deed executed by the Lacys on April 30, 2004, for the benefit of Bowdry, states that it "assigns a vendor's lien and superior title" to the Property.[35]

Despite their transfer to Bowdry of a general warranty deed relating to the Property, the Lacys were well aware that the Property was encumbered by a federal tax lien.  Specifically, on March 2, 2004, almost two months prior to the sale of the Property, Lacy received notice from the United States that it intended to file suit against him in order to foreclose upon the federal tax lien encumbering the Property.[36]  Despite receipt of this pre-suit notice from the United States, and with full knowledge that his Property was encumbered by a federal tax lien, on April 30, 2004, Lacy and his wife conveyed the Property to Bowdry by general warranty deed and signed an Affidavit as to Debts and Liens relating to the

---

[35]    Id. at Ex. C, General Warranty Deed.

[36]    Id. at Ex. H, The Government's Pre-suit Notice to Lacy.

10

Property.[37]  In this affidavit, the Lacys stated that there were no past due federal or state taxes with respect to the Property and that there were no state or federal liens encumbering the Property.[38]

      i.  <u>Warranty of Title</u>

A warranty of title is a "warranty that the seller or assignor of property has title to that property, that the transfer is rightful, and that there are no liens or other encumbrances beyond those that the buyer or assignee is aware of at the time of contracting."  Black's Law Dictionary 1620 (8th ed. 2004).  To prevail on a claim for breach of warranty of title, Bowdry must show that her title has failed and that she has suffered an actual or constructive eviction from her land.  <u>See</u> <u>Schneider v. Lipscomb County Nat'l Farm Loan Ass'n, et al.</u>, 202 S.W.2d 832, 834 (Tex. 1947); <u>French v. Bank of Sw. Nat'l Ass'n, Houston</u>, 422 S.W.2d 1, 6 (Tex. App.-Houston [1st Dist.] 1967, writ ref'd n.r.e.).  In the case of a constructive eviction, Bowdry must prove that paramount title has been positively asserted against her and that the asserted title is in fact paramount.  <u>Schneider</u>, 202 S.W.2d at 834.

The court finds that the Lacys breached the warranty of title in the general warranty deed.  Bowdry has presented sufficient evidence that the Lacys transferred ownership of the Property with

---

[37]    <u>Id.</u> at Ex. C, General Warranty Deed and Ex. F, Affidavit As to Debts and Liens.

[38]    <u>Id.</u> at Ex. F, Affidavit As to Debts and Liens.

full knowledge that it was encumbered by a federal tax lien, that the United States has sought to foreclose upon the Property, and that the United States' federal tax lien was paramount to Bowdry's interest in the Property.  The Lacys' have produced no evidence controverting these clear facts.  Accordingly, the court **GRANTS** the motion for summary judgment with respect to the breach of warranty of title cause of action.

  ii.  <u>Covenant of Seisin</u>

  A covenant of seisin or good right to convey is implied in every conveyance of land, except in quiclaim deeds.  <u>See</u> <u>Childress v. Siler</u>, 272 S.W.2d 417, 420 (Tex. Civ. App.–Waco 1954, writ ref'd n.r.e.).  This covenant is breached at the time the deed is conveyed if the grantor does not own the estate he undertakes to convey.  <u>Id.</u> In this instance, the record evidence establishes that the Lacys conveyed the Property knowing that it was encumbered with a federal tax lien.  Thus, the Lacys were aware that they did not own the estate that they purported to convey.  The court **GRANTS** Bowdry's motion for summary judgment with respect to the claim for breach of the covenant of seisin.

  iii. <u>Covenant Against Encumbrances</u>

  The covenant against encumbrances is a statutory warranty that is implied from the words "grant" or "convey" in a deed, and its purpose is to warrant that title to the land is not encumbered. Tex. Prop. Code Ann. § 5.023(a).  This covenant is "intended to

protect the grantee against rights or interests in third parties that, while consistent with the fee being in the grantor, diminish the value of the estate conveyed." <u>City of Beaumont v. Moore</u>, 202 S.W.2d 448, 453 (Tex. 1947) (stating that the covenant is "embraced within the general warranty clause, and it is the legal duty of the grantor to pay off and discharge all liens and [e]ncumbrances incurred prior to the conveyance which are not assumed by the warrantee."). A claim for breach of the covenant against encumbrances arises when the grantee is either dispossessed by foreclosure or compelled to discharge the encumbrance. <u>Wolff</u>, 345 S.W.2d at 568. Furthermore, the law is well settled that upon a breach of the covenant against encumbrances, a grantee is entitled to seek damages for the amounts that he paid to discharge the encumbrance. <u>Id.</u>

In this instance, Bowdry has submitted ample evidence that the Lacys' breached the covenant against encumbrances in the general warranty deed. Bowdry states in her affidavit that the Lacys conveyed the Property without informing her that it was encumbered by a federal tax lien.[39] She further recounts that First American discharged the lien on the Property by rendering $19,461.00 to the United States on her behalf.[40] Accordingly, the court finds sufficient record evidence that Bowdry was compelled to discharge

---

[39]   <u>Id.</u> at Ex. A, Sworn Affidavit of Lucinda Bowdry.

[40]   <u>Id.</u>

an encumbrance on the Property that was created by the Lacys.  The court **GRANTS** Bowdry's motion with respect to this cause of action.

### C.   The Lacy's Liability for Breach of the Residential Contract

To establish a claim for breach of contract, a plaintiff must show:  (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from the breach.  See McLaughlin, Inc. v. Northstar Drilling Tech., Inc., 138 S.W.3d 24, 27 (Tex. App.–San Antonio 2004, no pet.); Runge v. Raytheon E-Sys., Inc., 57 S.W.3d 562, 565 (Tex. App.–Waco 2001, no pet.).

The Lacys executed a residential contract in connection with the sale of the Property, wherein they represented that as of the closing date, "there will be no liens, assessments or security interests against the Property which will not be satisfied out of the sales proceeds."[41]  The default provision of the contract provides that, in the event the seller defaults, the buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate the contract and receive the earnest money, thereby releasing both parties from the contract.[42]

---

[41]   Id. at Ex. E, One to Four Family Residential Contract.

[42]   Id.

14

Subsequent to the date that the Property was conveyed to Bowdry by general warranty deed, she received notification that the Property was encumbered by a federal tax lien.[43]  First American reached a settlement with the United States by rendering $19,461.00 to the United States in exchange for the extinguishment of the lien.[44]  The court finds that Bowdry is entitled to this amount as economic damages for the Lacys' breach of the residential contract. Accordingly, the court **GRANTS** summary judgment with respect to this cause of action.  The court further finds that Bowdry is entitled to an award of prejudgment interest under Texas law and postjudgment interest under 28 U.S.C. § 1961.  See Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines, 278 F.3d 494, 500 (5th Cir. 2002) (stating that "Texas common law allows prejudgment and postjudgment interest on damages awarded for breach of contract."); Houston Oil & Minerals Corp. v. Am. Int'l Tool Co., 827 F.2d 1049, 1058 (5th Cir. 1987) (noting that a district court should award postjudgment interest rate at the rate prescribed by federal law).

### D.   The Lacys' Liability for Common-Law Fraud

A fraud cause of action requires the plaintiff to show evidence of: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied

---

[43]   Id. at Ex. A, Sworn Affidavit of Lucinda Bowdry.

[44]   Id.

upon, and (5) which caused injury.  See Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001).  To be material, a misrepresentation
or omission must have influenced the buyer's actions to the extent
that the buyer would not have entered into the transaction had the
representation not been made.  See Adickes v. Andreoli, 600 S.W. 2d
939 (Tex. Civ. App.–Houston [1st Dist.] 1980, writ dism'd).  The
fact that false representations were made with the intention that
they be acted upon and the fact of reliance upon such
representations may be established as a matter of law where the
evidence of such facts is undisputed.  See Custom Leasing, Inc. v.
Tex. Bank & Trust Co. of Dallas, 516 S.W.2d 138, 144 (1974).

Bowdry has likewise presented sufficient evidence that the
Lacys engaged in fraudulent conduct with respect to the conveyance
of the Property.  First, Bowdry proffers evidence that the Lacys'
knowingly made material misrepresentations concerning the
encumbrance on the Property.[45]  The Lacys affirmed in the Affidavit
as to Debts and Liens that there were no liens on the Property even
though Lacy had received prior notice from the United States that
it intended to foreclose upon the Property because it was encumbered
by a federal tax lien.[46]  In her affidavit, Bowdry states that she
acted in reliance upon these misrepresentations by purchasing the

_____

[45]     Id. at Ex. F, Affidavit As to Debts and Liens.

[46]     Id. at Ex. F, Affidavit As to Debts and Liens and Ex. H, The
Government's Pre-suit Notice to Lacy.

16

Property.[47]   She further states that she would not have purchased the Property had she been told about the encumbrance prior to the date of closing.[48]   Finally, Bowdry asserts that her reliance upon the Lacys' misrepresentations resulted in damages of $19,461.00 – the amount that First American was required to remit to the United States in order to discharge the encumbrance on the Property.[49] Based on this evidence, the court **GRANTS** Bowdry's motion for partial summary judgment with respect to this claim as well.

## E.   The Lacys' Liability for Statutory Fraud under the Texas Business and Commerce Code

Section 27.01 of the Texas Business and Commerce Code establishes a statutory cause of action for fraud in real-estate transactions.  See Bykowicz v. Pulte Home Corp., 950 F.2d 1046, 1050 (5th Cir. 1992) (noting that the reliance and materiality elements for statutory fraud are the same as those for Texas common law fraud).  The elements of statutory real-estate fraud are:  (1) a material misrepresentation; (2) that was made to induce a person to enter a contract; (3) that was relied upon by the person in entering the contract; and (4) that caused injury.  Tex. Bus. & Com. Code Ann. § 27.01(a)(1); see also Robbins v. Capozzi, 100 S.W.3d 18, 26 (Tex. App.–Tyler 2002, no pet.); Larsen v. Carlene Langford &

---

[47]   Id. at Ex. A, Sworn Affidavit of Lucinda Bowdry.

[48]   Id.

[49]   Id.

<u>Assocs.</u>, 41 S.W.3d 245, 249 (Tex. App.–Waco 2001, pet. denied);
<u>Scott v. Sebree</u>, 986 S.W.2d 364, 371 (Tex. App.–Austin 1999, pet.
denied).  Statutory fraud differs from common law fraud only in that
it does not require proof of knowledge or recklessness as a
prerequisite to the recovery of actual damages.  <u>Sebree</u>, 986 S.W.2d
at 371; <u>Fletcher v. Edwards</u>, 26 S.W.3d 66, 77 (Tex. App.–Waco 2000,
pet. denied).  A person who makes a false representation that
constitutes fraud under the statute is liable for the defrauded
person's actual damages.  Tex. Bus. & Com. Code Ann. § 27.01(b).
Actual damages consist of the difference between the value of the
property as represented and its actual value in the condition in
which it was delivered.  <u>See Leyendecker & Assocs., Inc. v. Wechter</u>,
683 S.W.2d 369, 373 (Tex. 1984).

In her motion for partial summary judgment, Bowdry contends
that the Lacys misrepresented that (1) they were conveying and
warranting all rights to the Property, (2) the estate was free from
encumbrances, (3) there were no federal tax liens on the Property
and (4) they would release all existing liens prior to closing.[50]
As discussed above, the court finds that Bowdry has presented
adequate evidence that the Lacys made several misrepresentations
with respect to the Property.  The Lacys have not presented any
controverting evidence.  Accordingly, the court **GRANTS** Bowdry's

---

[50]   <u>See</u> Bowdry's Motion for Default Judgment and Alternative Motion for
Summary Judgment, Docket Entry No. 65, p.7.

motion with respect to this cause of action and further finds that Bowdry is entitled to recover her actual damages in the amount of $19,461.00.

A person making a fraudulent misrepresentation under this statute that has actual awareness that he is making a false representation is liable for exemplary damages. Tex. Bus. & Com. Code Ann. § 27.01(c). Although the court finds that the Lacys' misrepresentations were made with knowledge, as Lacy received notification of the encumbrance on his Property prior to the date of closing, the court declines to award exemplary damages in this matter. The Texas Civil Practice and Remedies Code makes clear that a claimant relying on a statute establishing a cause of action and authorizing exemplary damages in conjunction with a specified culpable mental state may recover such damages only where the claimant proves by clear and convincing evidence that the damages resulted from the culpable mental state. See Tex. Civ. Prac. & Rem. Code § 41.003(c). Further, this provision states that exemplary damages "may be awarded only if the jury was unanimous in regard to finding liability for and the amount of exemplary damages." Id. § 41.003(d); see also Citizens Nat'l Bank v. Allen Rae Inv., Inc., 142 S.W. 459, 483 (Tex. App.–Fort Worth 2004, no pet.). Based on the foregoing, the court **DENIES** Bowdry's motion with respect to the award of exemplary damages, as the issue of exemplary damages rests solely in the province of the jury.

19

**F.   Bowdry's Entitlement to Attorneys' Fees Under the Texas Business and Commerce Code**

Any person who commits statutory fraud in a real-estate transaction is liable to the person defrauded for reasonable and necessary attorneys' fees, expert witness fees, deposition costs, and court costs.   Tex. Bus. & Com. Code Ann. § 27.01(e). First American seeks to recover the attorneys' fees it expended on behalf of Bowdry in this action.[51]  Bowdry submits the affidavit of Timothy M. McDaniel, her attorney of record, in support of her contention that the attorneys' fees expended in this lawsuit are reasonable and necessary.[52]

The following factors must be considered when determining the reasonableness of attorneys' fees:  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the

---

[51]     Id. at p. 8.

[52]     Id. at Ex. B, Sworn Affidavit of Timothy M. McDaniel.

services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  See Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).

Clear, direct, and uncontroverted evidence of attorneys' fees is taken as true as a matter of law.  See Petco Animal Supplies, Inc. v. Schuster, 144 S.W.3d 554, 567 (Tex. App.–Austin 2004, no pet.); Aquiar v. Segal, 167 S.W.3d 443, 456 (Tex. App.–Houston [14[th] Dist.] 2005, no pet.)(stating that the "trial court, as a trier of fact, may award attorney fees as a matter of law in circumstances where the evidence on attorney fees is not contradicted and is clear, direct and positive, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so.").  Furthermore, an attorney's affidavit alone constitutes expert testimony that will support an award of attorneys' fees in a summary judgment proceeding.  See Moody Nat'l Bank v. Riebschlager, 946 S.W.2d 521,  525 (Tex. App.–Houston [1[st] Dist.] 1997, writ ref'd).  Accordingly, after reviewing the evidence submitted by Bowdry and the applicable law, the court finds ample support on the record for awarding Bowdry attorneys' fees in the amount of $10,437.50.  The court **GRANTS** Bowdry's motion for summary judgment with respect to attorneys' fees.

## V.  Conclusion

Based on the foregoing, the court **GRANTS** Cross-Defendants'

Motion for Substitution of Real Party in Interest, **DENIES** Cross-Plaintiff's Motion for Default Judgment, **GRANTS IN PART AND DENIES IN PART** Cross-Plaintiff's Motion for Summary Judgment and **GRANTS** Cross-Defendants' Motion for Leave to File Answer to Cross-Plaintiff's Cross-Claim.

SIGNED in Houston, Texas, this 29th day of November, 2005.

Nancy K. Johnson
United States Magistrate Judge

22